IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FILED
JAN 31 2020
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

ANTHONY M. GREEN, SR., )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:17CV574–HEH
)
TIMOTHY DOSS, *et al.*, )
)
    Defendants. )

## MEMORANDUM OPINION
### (Granting Motion for Summary Judgment)

Anthony M. Green, Sr., a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action. The action proceeds on Green's Particularized Complaint ("Complaint," ECF No. 18), in which Green claims that his constitutional rights were violated because he was not permitted to marry during his incarceration at the Middle Peninsula Regional Security Center ("MPRSC"). The following claim remains before the Court:

> Claim One: Superintendent Timothy Doss ("Superintendent Doss") violated Green's right to due process guaranteed by the Fourteenth Amendment[1] by denying Green's requests to marry.

Green seeks monetary damages. (Compl. 3.) The matter is before the Court on Superintendent Doss's Motion for Summary Judgment. (ECF No. 39.) Green has responded. (ECF No. 41.) For the reasons stated below, the Court will grant the Motion for Summary Judgment and dismiss the action because Green failed to exhaust his administrative remedies.

---

[1] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

# I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). Superintendent Doss seeks summary judgment on the ground that Green failed to exhaust his administrative remedies. Because exhaustion is an affirmative defense, Superintendent Doss bears the burden of proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442,

448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of Superintendent Doss's Motion for Summary Judgment, he submits: (1) his own affidavit ("Doss Aff.," ECF No. 40–1, at 2–7); (2) copies of "Inmate All Purpose Request Forms" ("Request Forms") submitted by Green (ECF No. 40–2); (3) a copy of a grievance submitted by Green regarding his request to marry and a copy of the response to his grievance (ECF No. 40–3); (4) a copy of MPRSC's Inmate Grievance Procedures (ECF No. 40–4); (5) a copy of Green's signed MPRSC "Inmate Rules and Regulations" form (ECF No. 40–5); (6) the affidavit of Renaldo Anderson, a Sergeant at MPRSC, ("Anderson Aff.," ECF No. 40–6, at 2–4); (7) copies of grievances submitted by Green regarding issues other than Green's request to marry (ECF No. 40–7); (8) the affidavit of Tracy Proctor, the Assistant Superintendent at MPRSC, (ECF No. 40–8, at 2–5); and, (9) a copy of Green's marriage certificate (ECF No. 40–9). Green responded by submitting an unsworn, notarized memorandum.[2] (ECF No. 41, at 1–2.)

---

[2] Although Green's memorandum is notarized, the notary did not administer an oath and Green did not sign the memorandum under the penalty of perjury. *See Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991) (refusing to consider documents verified in such a manner to avoid the

3

At this stage, the Court is tasked with assessing whether Green "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Green's complete failure to present any evidence to counter Superintendent Doss's Motion for Summary Judgment permits the Court to rely solely on Superintendent Doss's submissions in deciding the Motion for Summary Judgment.

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Green.

## II. RELEVANT FACTS

### A.   MPRSC's Grievance Procedure

At MPRSC, the grievance procedure is stated in the Inmate Handbook in a section titled, "Inmate Grievance Procedures." (ECF No. 40–4, at 2; Doss Aff. ¶ 6.)[3] "Before filing a written grievance, an inmate is required to attempt to resolve any problems by submitting all purpose request forms and speaking with staff before filing a grievance." (Doss Aff. ¶ 9.) If an inmate is unsatisfied with the response, the inmate must "complete

---

penalty of perjury); *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2–3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief, as "mere pleading allegations") (quoting *Walker v. Tyler Cty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001)). The Court notes that Green's Complaint is also unsworn and is not notarized. (*See* Compl. 1–3.)

[3] The Court omits both the emphasis and all the capitals in the quotations from MPRSC's Inmate Grievance Procedures.

a request form stating [the inmate's] problem and why [the inmate] need[s] a grievance form." (ECF No. 40-4, at 2.) By submitting a request for a grievance form, an inmate initiates the grievance procedure. (*Id.* at 4.) The request form is forwarded to the Lieutenant of Security, and "after review of [the] problem by the Lieutenant of Security," the inmate's housing officer will provide the inmate with a grievance form. (*Id.*) The inmate must "complete and return the grievance form within twenty-four (24) hours after receiving the form." (*Id.*) In completing the grievance form, the inmate must "follow the directions on the grievance form" and "be brief but be very exact when describing the complaint, the other methods that have failed, and the requested action or relief." (*Id.*)

The completed grievance form will be given to the Assistant Superintendent. (*Id.*) "The Assistant Superintendent will conduct a formal investigation." (*Id.*) As part of this investigation, "[t]he inmate and any person named in the grievance may present relevant information to defendant their positions." (*Id.*) After conducting this investigation, "[t]he Assistant Superintendent will communicate [his or her] decision within nine (9) working days from the date the grievance form was received." (*Id.*)

If the inmate "or any direct party to the grievance is not satisfied with the results of the investigation, the decision may be appealed to the Superintendent." (*Id.*) To initiate the appeal process, the inmate must complete Part III on the returned grievance form, and then submit it to the Superintendent. (*Id.* at 4–5.) "The Superintendent will respond within[] seven (7) working days after the receipt of the appeal." (*Id.* at 5.) The Superintendent's decision is final. (*Id.*)

5

### B. Facts Underlying Green's Claim & Pertaining to Green's Exhaustion of the Grievance Procedure

On February 24, 2017, after being booked into MPRSC, "Green received an inmate handbook and signed his Acknowledgement Form, acknowledging receipt of the inmate handbook, verifying that he understood that it was his responsibility to know and follow the rules and regulations therein and recognizing the existence of an official grievance procedure." (Doss Aff. ¶¶ 6–7.)

"On March 2, 2017, Green submitted a Request Form seeking approval to have a marriage ceremony performed at MPRSC." (*Id.* ¶ 10.)[4] Superintendent Doss responded to Green's request on March 6, 2017, and "informed [Green] that marriage ceremonies [were] not performed at MPRSC." (*Id.* ¶ 11.) Green submitted a Request Form on March 6, 2017, and requested an in-person meeting with Superintendent Doss. (*Id.* ¶ 12.) The next day, March 7, 2017, Superintendent Doss met with Green, and he again informed Green that marriage ceremonies were not performed at MPRSC. (*Id.*) Later that same day, "Green submitted another Request Form thanking [Superintendent Doss] for meeting with him and allowing him to express his concerns." (*Id.* ¶ 13.)

Subsequently, "[o]n May 11, 2017, Green submitted a Request Form seeking another in-person meeting with [Superintendent Doss] to discuss a few concerns." (*Id.* ¶ 14.) Superintendent Doss met with Green on May 22, 2017. (*Id.*)

"On June 2, 2017, Green submitted a Request Form to obtain a grievance to file regarding his right to get married." (*Id.* ¶ 15.) Later that same day, a grievance form was

---

[4] The Court omits the secondary citations set forth in the affidavits submitted by Superintendent Doss.

provided to Green. (*Id.* ¶ 16.) Green submitted an Inmate Grievance Form on June 3, 2017, "asserting the denial of his constitutional right to marry and seeking the ability to get married at his own expense." (*Id.* ¶ 17.)

After Assistant Superintendent Proctor researched the issue, and he and Superintendent Doss consulted with general counsel for MPRSC, Superintendent Doss "reversed [his] position in order to allow inmate marriages to be performed at MPRSC." (*Id.* ¶ 18.) Superintendent Doss then "administratively changed the marriage policy to allow inmate marriage ceremonies." (*Id.*)

On June 15, 2017, Assistant Superintendent Proctor responded to Green's grievance. (*Id.* ¶ 19.) In Assistant Superintendent Proctor's response, he "explain[ed] the change in policy to allow inmate marriages to be performed at MPRSC in conformance with the law." (*Id.*) "On June 20, 2017, Green received the response from [Assistant Superintendent] Proctor and signed the grievance form indicating that he would like to appeal the decision." (Anderson Aff. ¶ 10.) However, Green did not complete Part III of the grievance form "explaining the basis of his appeal" nor did he "return the completed appeal form for consideration." (*Id.* ¶¶ 10–11.)

After Assistant Superintendent Proctor responded to Green's grievance, but before Green filed the instant lawsuit, Superintendent Doss "personally spoke with Mr. Green to inform him of the change in policy." (Doss Aff. ¶ 20.) At that time, Green "informed [Superintendent Doss] that he was not planning to proceed with his marriage at that time." (*Id.*) Thereafter, "[d]espite being notified of the change in policy, Green did not pursue arrangements to have a ceremony performed at MPRSC." (Proctor Aff. ¶ 13.)

7

In his affidavit, Superintendent Doss swears that "[he] took no actions whatsoever to interfere with Green's ability to proceed with a marriage ceremony following the change in policy[,] which was communicated to [Green] on June 20, 2017." (Doss Aff. ¶ 22.) On September 1, 2017, Green was transferred to the Virginia Department of Corrections. (*See* ECF No. 40-7, at 16.) In March of 2019, Green married. (ECF No. 40-9, at 2.)

### III. EXHAUSTION ANALYSIS

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Here, Green failed to exhaust his administrative remedies with regard to his claim. As noted above, Green filed a grievance concerning his request to marry. However, Green failed to exercise his right to appeal the response to this grievance by submitting an appeal to Superintendent Doss.

In Green's Response, he argues that he filed "numerous request forms numbering over five (5)" and "numerous grievance forms totaling over three (3) separate filings."[5] (Resp. 1.) Green argues that this "demonstrates due diligence on [his] part." (*Id.*) However, as noted above, to satisfy the exhaustion requirement, an inmate must properly exhaust his or her administrative remedies by adhering to the agency's deadlines and procedural rules. *See Woodford*, 548 U.S. at 90, 93. Green does not contend that he submitted an appeal, as required to properly exhaust his administrative remedies.

Moreover, to the extent that Green argues that his "due diligence" in filing request forms and a grievance form excuses his failure to exhaust his administrative remedies, as explained below, such an argument fails. Although "an administrative remedy is not considered to have been available if a prisoner, through no fault of his [or her] own, was prevented from availing himself of it," *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted), Green fails to demonstrate that he was somehow prevented from pursuing an appeal of his grievance. Section "1997e(a) does not permit the court to

---

[5] Green does not identify the specific request forms and grievance forms that he references in his Response. (*See* Resp. 1–2.) As summarized above, the record reflects that Green submitted one Inmate Grievance Form regarding his request to marry.

9

consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'" *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (citation omitted); *see Ross v. Blake*, 136 S. Ct. 1850, 1856–59 (2016) (discussing when administrative procedures are unavailable to an inmate). To excuse compliance with a grievance system, courts have required an inmate show that he or she was prevented from filing a grievance by affirmative action on the part of prison officials. *Graham v. Cty. of Gloucester, Va.*, 668 F. Supp. 2d 734, 738 (E.D. Va. 2009) (citing *Brown v. Croak*, 312 F.3d 109, 112–13 (3d Cir. 2002); *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000); *Born v. Monmouth Cty. Corr. Inst.*, No. 07–3771, 2008 WL 4056313, at *3–4 (D.N.J. Aug. 28, 2008)), *aff'd sub nom. Graham v. Gentry*, 413 F. App'x 660 (4th Cir. 2011).

Green fails to provide any evidence that any officer at MPRSC prevented him from appealing his grievance. Any subjective belief by Green as to the availability of the grievance system fails to excuse his lack of exhaustion. *Lyon*, 305 F.3d at 809. The record therefore establishes that Green failed to comply with 42 U.S.C. § 1997e(a). *See Woodford*, 548 U.S. at 90. Accordingly, Green's claim will be dismissed without prejudice. *See Duncan v. Clarke*, No. 3:12CV482, 2015 WL 75256, at *9 (E.D. Va. Jan. 6, 2015) (explaining that "the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice" (citing *Booth*, 532 U.S. at 735)).

## IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (ECF No. 39) will be granted. Green's claim will be dismissed without prejudice. The action will be dismissed.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: January 30, 2020
Richmond, Virginia

11